Good morning, Your Honors. Greg Weston for the Plaintiff Appellate, Shavonda Hawkins. I'd like to start this case by saying I think this may be the most grave and important appeal this Court hears this year, or perhaps even longer. TransFat is responsible for at one point more than 100,000 excess deaths. The most important what? Case this Court will hear. I hope not. Well, let me give my reason for this. TransFat during the peak of its use in the American food supply caused excess mortality of 100,000 Americans per year. The number is lower now, but Americans continue to die every single year as a result of TransFat consumption, which we believe is not legal to put in the food supply under California state law. On their behalf, on behalf of these people who are dying now and who have died in the past, I would implore this Court, I would beg and I would pray that it issued a published decision on this. Well, prayers are not going to get you very far here. How about some law? Pardon? I said prayers are not going to get you too far here. Yes. How about some law? Well, if I could offer a practical reason, there are two district court cases that are stayed pending this appeal, and there are also two pending appeals that are several months behind this one that would be resolved by a published opinion in this case. But to get to the law, we have two different theories here. One was very squarely addressed in Reed v. Johnson & Johnson and says nutrient content claims involving TransFat are simply not allowed. What Reed said is, by default, nutrient content claims, such as the one at issue here, as well as the one at issue in Reed, are not allowed unless specifically authorized by the FDA. And what Reed said explicitly is there is no TransFat nutrient content claim. The FDA considered creating one and then simply decided not to based on lack of information. And Reed poses a question if, in response to the manufacturer using TransFat back in that case, if TransFat claims were authorized, then why did they consider a new regulation doing so? And Reed is controlling and is correct. There was another decision that this district court here explicitly followed, and as well as the district court in Reed incorrectly followed and was reversed on. And what that decision was is CREA v. Dryers. And I looked at the party briefs, and none of the three party briefs, nor the very short unpublished opinion ever discuss 21 CFR 101.62. That regulation explicitly concerns, and it's header, nutrient content claims involving fat, fatty acid, and cholesterol. Is it your contention that the statement on the front of the product is false or misleading? False and misleading? Yes, it is. How does it differ from the statement in the box on the back? Well, they're under separate regulations. No, I asked how the statement differs from the statement on the back of the box. It differs in the sense that the statement in the back is subject to rounding rules, and the statement in the front. So how does it differ from the statement? And how is it false and misleading? It is misleading because, as Reed says, it contains more than zero grams of TransFat. It does contain more than zero grams? Yes. That means more grams than zero. Yes. It contains between zero and .5 grams per serving. Okay. And that's true of the statement on the back also? The statement on the back that is part of the nutrition label is governed by a mandatory rounding rule. What it's governed by, I'm asking you the difference between the two statements. Is there a difference between the two statements? Yes, there is a difference in the statement. The difference is it says TransFat dot, dot, dot, zero grams, and on the front it says very prominently zero grams TransFat per serving. It says the same thing, right? The front says zero grams of TransFat. The back says zero grams of TransFat. I disagree they convey the same information. I very much disagree with that. And even though they both use zero grams, they do not convey the same information. What's the difference? The difference is when you highlight the lack of a nutrient that people who are concerned about their hearts look for, on the front of the label, that makes a general representation that this product is something, if you're concerned about your heart, you should buy this safely. That's why the FDA... So you're saying that the front zero grams of TransFat is absolute. It's equivalent to no TransFat, but the back, when you say zero grams of TransFat, that stands for less than .5 grams of TransFat? That is correct. And if I could go to the cholesterol... How can the same statement be misleading and false and at the same time not misleading or false? My position, what you just described, is also the FDA's position. The FDA absolutely does not allow you to say zero milligrams cholesterol on the front label. Okay, I'm not asking you that. You know, just to answer the questions, can a statement of fact be both false and misleading and not false and misleading? Yes, and it's about the context. What context is there? The context is on the nutrition label, there are mandatory claims put in the context next to the ingredient list, as well as a listing of the other nutrients. A nutrient content claim on the front is saying this product is special because it has this feature. And for that reason, those can be deceptive, even if they're the same as the one on the back. Basically what you're saying is under this regulatory scheme, which is anything but easy to really delve into, that there is a dichotomy and a distinction that's drawn between what could be on the nutrition label on the one hand and what could be a nutrient content representation on another part of the label of the product. That is exactly correct. That follows from 101.62. Explain to me whether that is really the basis for why you think that the answer to Judge Reinhart's question is yes, there are different standards and it could be one way on the nutrition label and a different way on the nutrient label. I think that's what you're really talking about. Yes, well, the simplest analysis on this is simply that all trans-fat nutrient content claims, even if they're true, are simply not allowed to be made on the front label. They're not authorized and only authorized ones are allowed. That applies because 101.62 doesn't talk about trans-fats at all. Yes, it does not mention trans-fats. However, it does say only the following authorized claims are allowed to be made about fats and cholesterol. It doesn't say anything about trans-fats at all, so there's no preemption to deal with in that respect. But I think the thing that's paradoxical, and I go back to read, it seems to me, if I read read correctly, that's exactly what the court did in read. It drew a distinction and a dichotomy between the nutrition label on the one hand and all the nutrition content on the rest of the package on the other hand, and it drew that from interpreting 101.62. Am I right or wrong about that? That is exactly correct. That is exactly what read did. Read said no trans-fat. It didn't say no grams of trans-fat. That is correct. The labels are different. I mean, I have difficulty finding something false and misleading as a statement of fact when the same statement of fact is not false and misleading on the other side of the package. Well, that is indeed what our regulatory scheme says, and that is Well, that may be, but that may be what the scheme says, but this is not a world of alternate facts or of alternate truths. It's a world where a fact is a fact. Well, I guess what Judge Reinhart is saying is that zero grams trans-fat is not incorrect because that means there's less than one gram, and that's different than no trans-fats at all, which is what read was all about. Is that a valid distinction? I don't think the FDA has any distinction between zero G versus the word no, and those claims are grouped together with claims about negligible amount with regard to saturated fat. But, again, there are simply no trans-fat claims of any sort allowed on the front of the label, even if they were true. It's under 101.13B, but then when you get down to 101.13I, with the listing of what's allowed in terms of nutrient content claims, the percentage of nutrient content claims on labeling, it does seem to allow for certain claims without reference to 101.62. Part of 101.13 is the header is general rules, and we agree that the claim does comply with one general rule, which is that they correspond to one another. However, 101.13 does say you also need to follow the particular rules for each group of nutrients, and the particular rules for fat and cholesterol are 101.62, and if you look at 101.62, it violates it. So we've never disputed that if a trans-fat claim were authorized, were allowed, then that would possibly be okay because it complies with that particular section of 101.13, but that's simply not enough. We don't have to say they violate every part of it. We only need to show they violate 101.62. Do you think there's a distinction between saying zero trans-fat, that was read, Z-E-R-O, no trans-fat, and then you have a label that says zero trans-fat, and then you may have another label that says zero grams of trans-fat. Are there any distinctions between those three different dynamics, so to speak? No, and I can tell you the best statement of the reason why there is no distinction. Once again, 101.62, when it is regulating saturated fat claims and total fat claims and cholesterol claims, groups those groups together. They say in the list of regulated claims they have zero, they have no, they have negligible amount, and they're all regulated together under the exact same rule with regard to total fat and with regard to saturated fat. If there ever were an authorized trans-fat claim, which there's not, they would certainly do the same thing and regulate no and zero grams together. As a practical matter, why do you think the FDA or Congress and this whole regulatory scheme would draw a distinction between the nutrition label on the one hand and the nutrient content on the other hand? Why? Well, to use probably the best example, if you're making a claim you have no cholesterol but the product is full of trans-fat and saturated fat, the FDA is concerned that that front label claim, we don't have any cholesterol, is misleading because it says if you're worried about cholesterol, buy this. But in fact, if you're worried about cholesterol, you should avoid the product because of its high trans-fat and saturated fat. Dietary cholesterol is only a small bit of importance compared to what type of fat you're consuming and actually governing your blood cholesterol. And for that reason – You have a use claim here as well. Yes. You have a labeling claim and a use claim. They're two different issues here. Under your use claim, you say that there should not be any trans-fats in any of these foods whatsoever under California law, I take it, right? That is correct. I want to go forward with that and the court said that you're preempted from doing that, if I read that correctly. No, the court did not address the preemption of use claim. Did not address that at all? No. But you feel that you have the standing, you have the right to go forward with your use claim as well, right? Yes. And there's nothing in the way. So what was the lower court's decision in respect to the use claim? It was just based upon what? Lack of standing. Totally lack of standing. And you say that there is standing now because of what? Davidson again? No. They're both claims. The claims are economic. And the reason that the district court said there's no standing is because the plaintiff purchased the product before it had the zero grams claim on it. And therefore, it said the claim that she relied on zero grams during the period it did have it was not credible. And I disagree with that. I think under California's very forgiving standard, if you purchased a product even in partial reliance, even one time on a false label claim, you have standing to bring claim. So it's possible, I guess, in terms of our resolving this matter, where it may well be hypothetically that we say, no, there's no improper labeling here, but still we would have to reach the use claim as well. That's separate from that, right? Yes. I think the court should reach the use preemption claim first because it's fully briefed and because there are multiple cases stayed hoping that this court will resolve it. And then the second reason is the court could affirm the dismissal based on preemption of our use claim. And that's the reason that both parties fully briefed preemption of the use claim. And I know I'm over my time, but if I could give you one sentence on the use claim on preemption, I would like to quote what the FDA said in 2015 about when asked if its new trans fat regulation could have preemptive effect under state law. Your time is up. Okay. I just want to be clear that if we say no on the labeling claim, we still have to reach the use claim. And the issue of preemption, even though it was not addressed by the district court, is something we could address and should address since it deals with a matter of law. Yes, I agree. Good morning, Your Honors. Jacob Harper, Davis Retreat for the Kroger Company. Before I launch into my argument, I want to address the distinction between the no trans fat and the zero trans fat because I actually think it's a fairly simple distinction. You think there's a difference between zero and no? I do. And that's actually the difference that this court in Correa and this court in Reed had addressed. They didn't even consider that in Correa. The arguments weren't even raised. 101.62 wasn't even briefed. It wasn't trotted out. The court decided that on a summary disposition basis with limited information. And I looked at those papers. The arguments that we have here were not at all raised in Correa. It just went right past the court, right past the lawyers. Let me just ask you, I'm just curious. Sure. As to how you can differentiate between something that says zero trans fat and zero G trans fat because it seems that that's what Reed was all about. I agree, Your Honor. I'll look to the regulations for that. The regulations, zero grams trans fat falls into 21 CFR 101.13, which Judge Nguyen had referenced. That's an amount or percentage of a nutrient. That's zero grams. That's an amount or percentage, a precise number, whereas zero trans fat falls under fat-free or no fat. You draw a distinction between Z-E-R-O and just zero. I do. And that's what this is all about. How about if it says zero G? Does it make a difference? It does because zero G is the same as zero grams, and that's a statutorily defined, statutorily and regulatorily defined term for zero grams. What if it even said zero G trans fats instead of zero trans fats? Would that make a difference? It does. Zero G trans fat under the regulations means up to 0.4 grams of trans fat. The FDA's final determination in 2015 made clear that up to 0.4 grams of trans fat is appropriate for the zero grams. The nutrition label for the nutrition content. Correct, Your Honor, but that's where Correa had addressed this. But Correa wasn't even addressing 101.62. And it seems to me that you say that this case should really be distinguished from Reid because Reid said Z-E-R-O trans fat, and this case is zero G trans fat. You say that's a distinction that separates this case from Reid. I think that's what you're saying. That is correct, Your Honor. I would add, Your Honor, though, that counsel, my colleague, made the same distinction when he was discussing Reid, and we had referenced that in our papers. The key distinction between zero grams and zero is that one is a qualitative amount or percentage of trans fat, and the other one is not. Do you think that a consumer looking at that label is going to say there's a difference between Z-E-R-O and just zero, the number? Well, I think that's where the preemption comes in because zero grams trans fat is. You're talking about two different things. One is grams and one is whatsoever. If you didn't have grams in there, zero trans fat would mean not the slightest trace. If you say zero grams, that's a different issue. Correct. Zero grams trans fat is a – I can't say this enough times, but the FDA has stated that the term zero grams trans fat must be stated up to – between zero trans fat and – For the label, for the label. But, you know, I guess what really – maybe if it says zero grams, that means that there's less than one. A gram has to be at least one, I guess. Is that what you're saying here? No, but it's less than 0.5. So you don't draw any distinction between what's required for the nutritional label and what's required for nutrient content? I don't, Your Honor, because – Well, V does. I disagree, Your Honor, that – You know, of anything that says something is false and misleading, if stated on the label, and – or not false, it's true if stated on the label, but false if stated on the front. I'm not, Your Honor. I'm not aware of any case saying that a – the identical statement, zero grams per serving, which is in the nutritional facts, is not false, which is what the cases say. And – but it's – it becomes false by placing it on the front of the label. Explain to me what V meant. I think on the nutritional label in V, it said zero grams, right? It did not. The nutritional label said zero grams, but the statement that was at issue said no trans fat. And that was a – that is a – that is the key distinction between a – a – the term zero grams trans fat and no trans fat. It doesn't have trans fats. It says no trans fats, but there are trans fats. And on the nutritional label, you can read. You can say that on the label and read. Did it not say zero trans fats? In the – I'm sorry. Did the label in V say zero trans fats? On the – Nutritional label. The – the – the nutritional box said zero grams trans fats. Right. And then in the court in V, that drew a distinction between the label on the one hand and what was on the nutrition content, which said Z-E-R-O, trans fats. It did. That's the way I read V. It said zero trans fats in the front and zero grams on the back. It said no trans fat on the front. No trans fat on the front. And I – I hate to keep harping on this point. No trans fat on the front. It said no trans fat on the front and zero grams. On the back it said zero grams. Right. And – and – And here it says zero grams on the front and zero grams on the back. Correct, Your Honor. And – and in read, I – I need to make this point, but 101.62 deals with a level of fat, a – Does it say anything about trans fats? It does not. So there's no preemption. I – I don't agree with that. I – Where's the preemption? 101.62 says no fats. I get that. This says nothing about trans fats. In fact, there's statements at all in the regulations which say it's not intended to preempt. I thought your opponent was relying on 101.62 as a basis of his claim that there was something wrong with the label on the front. Now – now – No, I – I agree that he's relying on 101.62. 101.62 – But – That is zero fat, no fat, negligible source of fat, et cetera. All we're saying is that there's no preemption by reason of 101.62. Do you agree with that? I do not agree. Where's the preemption? The preemption is because the zero grams trans fat on the nutrition fact label, that is what is at issue here. There is no statement of – the only statement here is the statement in the nutrition fact that says zero grams trans fat per serving and an exact same statement on the front of the label that says zero grams trans fat per serving. I have a hard time reading read the way you want me to read it, that the court, you know, basically followed Correa in read. I don't think he did that at all. I think he drew the distinction between the nutrition fact label, the one-handed nutrition content label, and whether it's Z-E-R-O or zero G, I guess we have to sort whether that's a difference or not. But conceptually, it seems that in read, there was this dichotomy that the court embraced that was different than Correa. How do you get around that? Well, Your Honor, I respectfully disagree that the distinction is between zero grams trans fat and no trans fat. There is no no trans fat claim here. Let me go on to something else. We have a use claim here as well. Yes. All right. And we haven't spent a lot of time on that. But if we were to agree with you and say, okay, the label is all right, we still have the use claim. And that was really tossed out on the basis of standing. And, you know, we have a preemption argument that you briefed back and forth, which wasn't addressed by the lower court. But how do we deal with the use claim here? Why does that not survive regardless of what decision we make in regard to the label? Well, as with the mislabeling, there's a standing issue and a preemption issue, albeit a separate preemption issue for the use claim. Let's assume that I think they're standing. Okay. We have to reach the preemption issue as a practical matter, don't we? Yes, Your Honor, you do have to reach that. And where do you get preemption here? When I read all these regulations and everything that came out, there's express provisions that says that the extension to 2018 is not intended to preempt state law. Well, if you look at the language that Your Honor is citing, it actually says it's not likely, quote, not likely to conflict with state law. However, if you look at the state laws, including the state laws that are cited in the complaint, those state laws uniformly say that food products may contain up to 0.5 grams of trans fat, which tracks identically with the FDA regulations on the use of trans fat and the zero grams trans fat. Are you relying at all on 101.13 subsection I in the listing of the various percentages that can be claimed in labeling? I'm not sure I understand your question, Your Honor. Because 101.13 I, it seems to me, does allow some claims of nutritional content in labeling that's not based on the section that plaintiff relies on, which is 101.62. I know that this is going to get very confusing. But to me, it does allow for some of that so long as it's not false and misleading. So is your argument that I can go under 101.13 subsection I and this statement here in the front, going back to Judge Reinhart's point, is literally not false and misleading? Correct, Your Honor. That is correct. Because it has less than 0.5 grams of trans fat. That is exactly right, Your Honor. And that is a key issue that applies throughout this, is that provision that requires Kroger and every company stating the zero grams trans fat. The statement of the amount of trans fat is required by 101.13. Does the regulation that permits a claim of zero grams of trans fat to be made when it's less than 0.5 grams? Is that limited to just the nutrition label? It is not, Your Honor. And how do we know that? Well, it would be a contradiction to have, and confusing, and actually the FDA regulations and the notice, I don't recall the citation, but in the FDA's final determination, in fact, it said that it would be confusing to have one set of definitions for zero grams trans fat or other identifiers in the nutritional label and have a separate set of identical information, zero grams trans fat for serving in other places on the label. Because then you'd have the same problem that Judge Reinhart mentioned at the very beginning of argument, which is how do you have the identical statement saying two different things? We have the FDA defining what that statement, zero grams trans fat, says and applies in the nutritional fact box and a totally separate and different meaning for that same zero grams trans fat per serving elsewhere on the label, then it becomes a contradiction in terms. I read those regulatory schemes as allowing exactly that. I know it sounds improbable because your knee-jerk reaction is that if it says one thing on the nutritional label, that lights out, that covers everything. But I don't think those regulations really support that. Now, I may be wrong, but I see that there is a distinction that's drawn, even though it sounds problematical. Well, Your Honor, unless I'm well. It's not an easy case. I'm way over time, but if any other questions. Thank you very much. Thank you, Your Honors. May I have another minute, Your Honor? How are we doing on time? Over time. All right. We'll give you another minute. Okay. I should keep it very brief, but there were a couple questions that I thought I should address. I'd like to start with Judge Wynn's question. I believe her question to be, okay, I agree that there's nothing about trans fat permitted in .62, but what about .13? And that was an exact issue that came up in Reed, and this is what Reed said about it. This would mean section 101.62 is redundant. If section 101.13 authorizes no fat and no saturated fat claims for products with small amounts of them, why would the FDA go to the trouble of promulgating a separate regulation? And that regulation, again, says only the following claims about the level of fat are permitted, and zero grams trans fat just as much as no trans fat is a claim about the level of fat and is not permitted because it does not appear on the list of 101.62's authorized fat claims. Well, it's not a claim. It's a statement of fact. Yes. See, the difference between this case and Reed or whatever it is, is the statement about trans fat was not only inaccurate, but it was surrounded by a series of statements that led you to a feeling that it was good for your health. This is an isolated statement. It doesn't say, look, we've only got less than a gram, therefore this is good for you. It won't do you any harm. It doesn't say anything except a factual statement, which as a matter of fact cannot be false unless we have two facts, two truths in life, once where a statement is false and once where it's true, just in isolation. This is not in any way like Reed where there's a whole series of statements which put this in context. There's no context to this. It's a mere factual statement, which is either, as far as I'm concerned, it's either false or it's not false. And if it's false, it's false both places. Well, I agree that Reed was much more egregiously misleading than the claim here. But the issue in Reed, and the reason we're talking about possibly true, possibly not, is the question is when you're doing rounding, when you are not required to in the front label claim, nutrient content claim, could that rounding where it's required on the nutrition label be misleading on the front? And, again, the FDA believes that. And regarding the distinction between the different claims between the phrase no fat and zero grams fat, this is, again, directly from 101.62 subsection B1. These are the fat claims that are regulated together. Fat-free, free of fat, no fat, zero fat, without fat, negligible source of fat, insignificant source of fat. Those ones, in particular, no fat and zero fat, are regulated with regard to both saturated and total fat claims in the exact same way if there ever were one. It doesn't say no fat or zero fat. This is no gram. Gram is what is a term that's defined on the back, and it's the identical term. If this lady was interested in the amount of trans-whatever they were, fat, and this label hadn't been there, this statement of no grams hadn't been there, she could have turned it around and she would have found the identical statement. And she would have been just as misled, except that it's true. And it can't be true as far as I'm concerned. This is, I don't think, a knee-jerk reaction. I think this is a reaction to my belief that there are facts and that the same statement can't be false and true unless there's something surrounding it, as there was in Reed, which tells you what it means, what effect it has. This is just a simple statement of fact, which you find in two places on the bottle or on package, two places on the package with nothing else for context we've talked about, but unlike Reed, where it goes on forever, telling you how wonderful all this is for you, this just calls to your attention something you would find on the back, the identical statement, without any other context. That's true, but Reed did focus on the no trans fat label and I don't think it went on to really, it's different in this case. But if I read Reed correctly, it says no trans fats and it draws that distinction under 101.62. We'll have to look at it all again, but it's not a simple cup of tea. Well, I can continue if that's all right to address. Thank you very much for the additional time, Your Honors. I'm sorry that sometimes judges take more of the time than the lawyers, but that's just part of life. Could I address the procedural issue? Pardon, okay. Thank you. At least you know you have a live bench here, right? Thank you. Thank you both very much, and the case is arguably submitted.
judges: Reinhardt, Nguyen, Block